**VERBRYKE et al., Appellants,**

v.

**OWENS–CORNING FIBERGLAS CORPORATION, Appellee.**

[Cite as *Verbryke v. Owens–Corning Fiberglas Corp.* (1992), 84 Ohio App.3d 388.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–350.

Decided Dec. 18, 1992.

*Matthew T. Bradey,* for appellants.

*Jeffrey H. Chilton, Susan Healy Zitterman* and *Paula M. Burgess,* for Owens–Corning Fiberglas Corporation.

*Robert A. Bunda, Anne Y. Koester* and *Richard A. Papurt,* for *amicus curiae,* Owens–Illinois, Inc.

SHERCK, Judge.

This is an appeal from an order which directed a verdict in favor of an asbestos manufacturer. Because we find, after construing the evidence most favorably toward the nonmoving party, that reasonable minds could differ as to whether appellants proved exposure to the asbestos manufacturer's product and whether that exposure caused injury, we reverse.

Appellants are Robert Verbryke and his wife Harriet. Robert Verbryke was employed at the Toledo Plant of the E.I. DuPont Company from 1945 until his

retirement in 1985. The Toledo DuPont plant manufactures automobile paint. Inside the plant are numerous insulated pipes. Appellee, Owens–Corning Fiberglas Corporation, was a distributor of a pipe insulation product, brand named "Kaylo," between 1954 and 1957 and its manufacturer from 1958 until 1972. Kaylo contained asbestos and was used as pipe insulation at DuPont's Toledo plant.

In 1987, two years following his retirement, Robert Verbryke participated in a medical screening for asbestos-related diseases. As a result of that screening, Verbryke was informed that he showed a pleural thickening of his lungs, which is associated with asbestos inhalation. He was also informed that, since it appeared that he had inhaled asbestos, he stood a greatly increased risk of developing certain cancers.

On February 8, 1989, appellants brought suit against appellee and five other defendants[1] alleging that each defendant had produced, sold, or otherwise introduced into commerce products containing asbestos which the defendants knew or should have known would be harmful to the health of one exposed to these products. The complaint further alleged that Robert Verbryke was exposed to these products and such exposure was the proximate cause of both Verbryke's asbestos-related disease and his emotional distress resulting from the disclosure that he faced a substantially increased risk of cancer.[2] Harriet Verbryke joined her husband's suit alleging loss of consortium.

On October 3, 1991, in accordance with the general order for Lucas County asbestos litigation, the first part of a bifurcated jury trial was held. This trial was limited to the issues of (1) product identification, (2) medical causation, and (3) compensatory damages.[3]

At trial appellant Robert Verbryke testified that, although he had never worked directly with pipe insulation at the DuPont plant, he had frequently been in proximity to maintenance crews performing reinsulation of pipes. Verbryke recalled frequently seeing clouds of dust in his work areas as maintenance workers tore off old insulation and replaced it with new. Verbryke also testified that he had a specific recollection of seeing insulation boxes labeled "Kaylo" and "Johns–Mansville." Verbryke said he saw the boxes, as follows: in 1945 when he

---

1. All of these other defendants have been dismissed or otherwise disposed of except for appellee Owens–Corning Fiberglas Corporation.

2. Appellants argued several theories of recovery, including intentional and negligent failure to warn, implied warranty of good and merchantable quality, and defective manufacture.

3. The general order reserved consideration of liability and punitive damages for later proceedings.

participated in unloading them, between 1953 and 1964 while working in the paint mixing room, and after 1964 in the plant's control laboratory.

Verbryke's account was corroborated, in part, by the testimony of a maintenance worker who recalled installing "Kaylo" and "Johns–Mansville" pipe covering in the control lab where Verbryke worked after 1965. The witness further testified that he saw other company maintenance workers and independent contractors applying these same products throughout the plant.

Appellants also presented the expert testimony of Dr. Paul Venizelos, a pulmonary specialist, who explained the difference between the diseases of asbestosis and asbestos-related pleural plaque. According to Dr. Venizelos, both diseases are precipitated by the inhalation of asbestos particles into the lungs. A pleural plaque or thickening occurs as progressive waves of asbestos fibers cut into the lining of the lung, causing layers of scar tissue to form. Asbestosis is distinguished by scarring of the lung tissue itself as opposed to only the lining of the lung. The doctor described both diseases as progressive and cumulative with a long latency period. There is neither a cure nor a treatment for either disease, according to the doctor.

Dr. Venizelos further stated that asbestos related pleural thickening presents itself by a characteristic pattern on an x-ray. This pattern is a marker of asbestos exposure, which means that the patient who presents such a pattern should be regularly examined for asbestosis, which has a latency period of as much as twenty-five years, or certain cancers, which may have a latency period of as much as thirty years. Dr. Venizelos testified that Robert Verbryke's x-ray exhibited such a characteristic pattern. Further, the doctor stated that it was his opinion within a reasonable degree of medical certainty that Robert Verbryke suffered an asbestos-related disease: asbestos-associated pleural fibrosis.

Dr. Venizelos testified that the probability of dying of lung cancer of a worker who has been exposed to asbestos is between five and fifty times that of an unexposed worker. Robert Verbryke testified that when he was informed that his condition might be a precursor to cancer, he was shaken. He stated that he was especially concerned since he previously had surgery to treat prostate cancer. Harriet Verbryke testified that the increase risk of cancer was a constant concern to both her and her husband.

The trial court denied appellee's motion for a directed verdict at the close of appellants' case-in-chief. However, appellee renewed its motion at the close of its own presentation. This motion the trial court granted. According to the trial court, appellants failed to perfect identification of appellee's product because they were unable to quantify the amount of asbestos dust attributable to Kaylo which Robert Verbryke had encountered in his workplace. Additionally, the trial court found that Robert Verbryke exhibited no symptoms of injury. The court found

testimony that Verbryke experienced shortness of breath attributable to his smoking and further found his fear of cancer to be unbelievable. From this order, appellants bring this appeal, citing the following three assignments of error:

"I. The trial court erred in granting the appellee's motion for directed verdict where the uncontroverted expert medical testimony revealed the appellant suffered from an asbestos-related condition.

"II. The trial court erred in finding there was no proof the appellee's Kaylo product caused injury to appellant.

"III. The trial court erred in holding that appellant had no fear of cancer when the testimony of appellant was to the contrary."

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." Civ.R. 50(A)(4).

" ' * * * [I]t is uncontestably the duty of a trial court to submit an essential issue to the jury when there is sufficient evidence, if believed, relating to that issue to permit reasonable minds to reach different conclusions on that issue. *Weaver v. Hicks* (1967), 11 Ohio St.2d 230 [40 O.O.2d 203, 228 N.E.2d 315]; *Francis v. Bieber* (1967), 10 Ohio St.2d 65, 69 [39 O.O.2d 52, 54, 225 N.E.2d 251, 254]; *Biery v. Pennsylvania Rd. Co.* (1951), 156 Ohio St. 75 [45 O.O. 70, 99 N.E.2d 895], *Belshaw v. Agricultural Ins. Co.* (1948), 150 Ohio St. 49 [37 O.O. 404, 80 N.E.2d 675]; *Bennett v. Sinclair Refining Co.* (1944), 144 Ohio St. 139 [29 O.O. 223, 57 N.E.2d 776].' " *Huber v. O'Neill* (1981), 66 Ohio St.2d 28, 29, 20 O.O.3d 17, 18, 419 N.E.2d 10, 11, quoting and following *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899.

I

Appellee and *amicus curiae* Owens–Illinois, Inc. invite us to hold that asbestos-related pleural thickening or pleural plaque is not an injury as a matter of law. We decline to do so.

Appellee directs our attention to cases in other jurisdictions wherein trial courts have seemingly found that pleural thickening or plaques are not injuries as a matter of law. However, our analysis of these cases reveals each is dependent on the interpretations of local law or evidentiary content.

In Hawaii, a federal district court, applying Hawaii law, granted defendant asbestos manufacturers a judgment notwithstanding the verdict when it found that plaintiffs were precluded from damages for either asbestos-related injuries or for fear of cancer absent evidence of functional impairment from asbestos exposure. The court found on the evidence that pleural plaques or pleural thickening represented no functional impairment. *In re Hawaii Fed. Asbestos Cases* (D.Hawaii 1990), 734 F.Supp. 1563, 1567–1568.

An Arizona appellate court held that plaintiffs' claims for personal injuries could not be maintained absent evidence of physical impairment, which was not shown merely because plaintiffs, "have asbestos fibers in their lungs which are causing changes in the lung tissue." *Burns v. Jaquays Mining Corp.* (1987), 156 Ariz. 375, 377, 752 P.2d 28, 30. Similarly, because Arizona requires bodily injury to support emotional distress, plaintiffs could not sustain that cause either. *Id.* at 378–379, 752 P.2d at 31–32.

*Burns* and *In re Hawaii Fed. Asbestos Cases* are distinguishable from the case at bar not only for differences in the local law applied, but for the evidence before the court. The Hawaii court appears to apply a Hawaiian rule, while the *Burns* court seems to base its decision on some inchoate condition resulting from mere exposure to asbestos as well as an Arizona rule requiring that the disease or injury be manifest. More apposite to the present case is a Maryland appeal of a trial court's instructions directing a jury that it could not award damages to a plaintiff based solely on the presence of pleural plaques or pleural thickening. *Owens–Illinois, Inc. v. Armstrong* (1991), 87 Md.App. 699, 591 A.2d 544, reversed on other grounds (1992), 326 Md. 107, 604 A.2d 47.

Maryland, like Ohio, has adopted both Sections 388 and 402A of the Restatement of the Law 2d, Torts (1965). *Owens–Illinois, Inc. v. Armstrong, supra,* at 734, 591 A.2d at 561; *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 256–257, 556 N.E.2d 1177, 1182; and *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, paragraphs one and two of the syllabus. In the case at bar, Section 388 forms the basis for appellant's cause of action for negligent failure to warn and Section 402A is the foundation for appellants' strict products liability claim. Both sections require "physical harm" as a necessary element to a cause of action.

The issue in the Maryland case, as in this case, was whether pleural plaque or pleural thickening constitutes "physical harm" as contemplated within the Restatement. The *Owens–Illinois* court recognized that the terms "injury" and "harm" are specifically defined terms of art as used throughout the Restatement.

See Restatement of Law 2d, Torts, *supra,* 12–13, Section 7, Comment *a.*[4] That court's analysis of the question then began with the Restatement, Section 7(2), which defines the word " 'harm' * * * to denote the existence of loss or detriment in fact of any kind to a person resulting from a cause." *Owens–Illinois, Inc. v. Armstrong, supra,* 87 Md.App. at 734, 591 A.2d at 561. The court continued, stating that "[c]omment *b* to Section 7 further explains that '[h]arm' implies a loss or detriment to a person, and not a mere change or alteration in some physical person, object or thing * * *." *Id.* The *Owens–Illinois* court then rejected plaintiff's argument that Section 15 of the Restatement defines "bodily harm" as an alteration to the body, "even though the alteration causes no other harm * * * because [the Restatement] broadly defines bodily harm only in the context of an action based on the intentional tort of battery." *Id.* The court then adopted the "functional impairment" test of *In re Hawaii Fed. Asbestos Cases* and concluded that when pleural scarring does not cause functional impairment it is noncompensable.

We, however, reject this analysis. "Physical harm" is an essential element of a cause of action stated under either Section 388 or Section 402A of the Restatement. Section 7 of the Restatement defines the various terms denoting invasions of interests throughout the Restatement:

"(1) The word 'injury' is used throughout the Restatement of this Subject to denote the invasion of any legally protected interest of another.

"(2) The word 'harm' is used throughout the Restatement of this Subject to denote the existence of loss or detriment in fact of any kind to a person resulting from any cause.

"(3) The words 'physical harm' are used throughout the Restatement of this Subject to denote the physical impairment of the human body, or of land or chattels."

Comment *b* to Section 7 explains that,

"[H]arm, as defined in this Section, is the detriment or loss to a person which occurs by virtue of, or as a result of, some alteration or change in his person, or in physical things, and also the detriment resulting to him from acts or conditions which impair his physical, emotional, or aesthetic well-being, his pecuniary advantage, his intangible rights, his reputation, or his other legally recognized interests. Frequently, where 'harm' is used in this Restatement, it is qualified by

---

4. It should be noted that one of principal reasons the Ohio Supreme Court adopted Sections 388 and 402(A) of the Restatement was that " * * * the Restatement formulation, together with its illustrative comments, greatly facilies analysis in this area * * *." *Crislip v. TCH Liquidating Co., supra,* 52 Ohio St.3d at 254, 556 N.E.2d at 1180. See, also, *Freas v. Prater Constr. Corp.* (1991), 60 Ohio St.3d 6, 9, 573 N.E.2d 27, 30.

some limiting adjective, such as bodily harm, physical harm, pecuniary harm, and the like. In each such case the intent is to limit the rule stated to the particular kind of harm specified. * * * "

Comment *e* to Section 7 deals specifically with "physical harm":

"The words 'physical harm' are used to denote physical impairment of the human body, or of tangible property, which is to say land or chattels. Where the harm is impairment of the body, it is called 'bodily harm,' as to which see § 15."

Section 15 of the Restatement defines "bodily harm" as:

" * * * any physical impairment of the condition of another's body, or physical pain or illness."

Comment *a* to Section 15 explains that,

"There is an impairment of the physical condition of another's body if the structure or function of any part of the other's body is altered to any extent even though the alteration causes no other harm. * * * "

▆▆ Application of the Restatement creates an immutable chain of logic. Both Sections 388 and 402A of the Restatement make "physical harm" an essential element of a cause predicated on those sections. Appellant has brought such a cause. Section 7(3) defines "physical harm" as an impairment to the human body, land or chattels. Comment *e* to Section 7 provides that where harm is an impairment to the human body it is called "bodily harm" and specifically directs us to the definition of "bodily harm" contained in Section 15. Section 15 defines "bodily harm" as either an impairment to the condition of the body, pain, or illness. Comment *a* to Section 15 explains that an impairment to the body is an alteration to the structure of the body even though no other harm is caused.

It is undisputed that pleural plaque or pleural thickening is an alteration to the lining of the lung. Accordingly, a pleural plaque or thickening meets the definition of "bodily harm," which is a subspecies of "physical harm" and thus satisfies the injury requirements of both Sections 388 and 402A of the Restatement. Therefore, the trial court erred when it directed a verdict against appellants on the ground that they failed to prove physical harm. The jury should have been allowed to determine the extent of the harm caused. Accord *Sullivan v. Combustion Eng.* (1991), 248 N.J.Super. 134, 590 A.2d 681.

Additionally, we note that even if Robert Verbryke's disease is asymptomatic it does not necessarily mean he is unharmed in the sense of the traditional negligence action. Appellant's medical expert, Dr. Venizelos, testified that Verbryke's x-ray showed a characteristic pattern indicative of asbestos exposure. He further stated that this exposure having been discovered, it now becomes medically prudent to monitor Verbryke's condition because of the increased

likelihood of the development of other asbestos-related conditions which may be debilitating or life threatening. At a minimum, required medical surveillance supports pecuniary harm to appellants. Accord *Burns v. Jaquays Min. Corp.* (Ariz.App.1987), 156 Ariz. 375, 380–381, 752 P.2d 28, 33–34.

Accordingly, we believe questions of fact exist both as to the issue of damages for bodily harm and the issue of pecuniary harm. We believe the trial court erred in directing a verdict against appellee. Therefore, appellants' first assignment of error is well taken.

## II

Appellants, in their second assignment of error, assert that the trial court erroneously determined that appellants failed to meet their burden of showing that appellee's product was a substantial cause of appellant Robert Verbryke's injury.

Were a jury to believe the testimony of (1) appellants' medical expert that the condition of Robert Verbryke's lungs was characteristic of asbestos inhalation, (2) Robert Verbryke's testimony that he saw Kaylo used in his plant for a period of forty years and was in proximity to workers changing insulation, (3) Dr. Venizelos's testimony that such exposure can cause Robert Verbryke's condition, and (4) the testimony of Robert Verbryke's coworker that after 1965 he participated in changing Kaylo insulation on pipes in Robert Verbryke's work area, it could reasonably conclude that Robert Verbryke's pleural thickening was caused, at least in part, by the inhalation of asbestos from Kaylo insulation. Similarly, the degree of appellee's culpability with respect to the products of other asbestos manufacturers to which Verbryke may have been exposed is a question of fact.[5] Accordingly, the issue of causation should have been submitted to the jury. *Huber v. O'Neill, supra.* Appellants' second assignment of error is well taken.

## III

Appellants' final assignment of error contests the court's finding that Robert Verbryke's testimony as to his distress and anxiety about his cancer risk was unbelievable.

---

5. We specifically reject appellee's implication that appellants may not show substantial causation absent proof that appellee's product was more responsible for this party's injury than other manufacturers' products. It is sufficient if it is shown that appellee's products contributed to the injury. The degree of contribution is left for apportionment of damages. See *Bowling v. Heil Co.* (1987), 31 Ohio St.3d 277, 286–289, 31 OBR 559, 566–569, 511 N.E.2d 373, 380–382.

"Weighing evidence connotes finding facts from the evidence submitted; no such role is undertaken by the court in considering a motion for directed verdict. * * * To hold that in considering a motion for directed verdict a court may weigh the evidence, would be to hold that a judge may usurp the function of the jury." *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 69, 23 O.O.3d 115, 117, 430 N.E.2d 935, 938.

■ At trial it was undisputed that exposure to asbestos greatly increases the probability of eventually acquiring lung cancer. Appellants' medical expert testified that the measure of this risk of cancer is between five and fifty times that of an unexposed worker. Both appellants testified that upon being informed of this risk Robert Verbryke became fearful and this fear was exacerbated by his previous treatment for prostate cancer. Whether this testimony represents a credible statement of serious emotional distress is within the province of the trier of fact. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 80, 6 OBR 114, 121, 451 N.E.2d 759, 767. Therefore, it was inappropriate in the instant case for the trial court to direct a verdict against appellants based upon its measure of the credibility of Robert Verbryke's testimony concerning his fear of cancer. Appellants' third assignment of error is well taken.

On consideration whereof, the court finds substantial justice has not been done the parties complaining and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this opinion. It is ordered that appellee pay court costs of this appeal.

*Judgment reversed.*

HANDWORK and MELVIN L. RESNICK, JJ., concur.