DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Lawrence County Common Pleas Court judgment in favor of Anchor Packing Company and numerous other entities,[2] defendants below and appellees herein.
 {¶ 2} Linda Ackison, as administratrix of the estate of Danny Ackison, deceased, and Linda Ackison, individually, plaintiffs below and appellants herein, raise the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN RULING THAT AN `OTHER CANCER' AND ASBESTOSIS DIAGNOSIS HAS TO BE DIAGNOSED BY A COMPETENT MEDICAL AUTHORITY AS R.C. 2305.10 AS [SIC] H.B. 292, R.C. 2307.92, R.C. 2307.93, R.C. 2307.94, AND THEIR PROGENY ARE UNCONSTITUTIONAL WHEN APPLIED RETROACTIVELY."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING THAT H.B. 292, R.C. 2307.92, R.C. 2307.93, R.C. 2307.94, AND ITS PROGENY REQUIRES PLAINTIFFS-APPELLANTS TO MEET A PRIMA FACIE CASE FOR BOTH AN ESOPHAGEAL CANCER AND ASBESTOSIS CLAIM."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN FINDING THAT R.C. 2307.92(D) SETS FORTH CERTAIN MINIMUM REQUIREMENTS FOR BRINGING OR MAINTAINING A TORT ACTION ALLEGING AN ASBESTOS CLAIM THAT IS BASED UPON WRONGFUL DEATH AND THAT THESE REQUIREMENTS APPLY NO MATTER WHAT THE UNDERLYING DISEASE."
 {¶ 3} This case centers around appellants' ability to pursue recovery for alleged asbestos-related injuries and whether recently-enacted H.B. 292 governs appellants' claims. On May 5, 2004, appellants filed a multi-plaintiff, seventy-eight page complaint against appellees alleging various asbestos-related injuries. On September 2, 2004, H.B. 292 became effective. The legislation requires a plaintiff "in any tort action who alleges an asbestos claim [to] file * * * a written report and supporting test results constituting prima-facie evidence of the exposed person's physical impairment that meets the minimum requirements specified in [R.C. 2307.92(B), (C), or (D)], whichever is applicable." The statute also applies to cases that are pending on the legislation's effective date. The statute requires plaintiffs with cases pending before the effective day to submit, within one hundred twenty days following the effective date, evidence sufficient to meet the R.C. 2307.92 prima facie showing requirement.
 {¶ 4} R.C. 2307.92 specifies three types of plaintiffs who must establish a prima-facie showing: (1) plaintiffs alleging an asbestos claim based on a nonmalignant condition; (2) plaintiffs alleging an asbestos claim based upon lung cancer of an exposed person who is a smoker; and (3) plaintiffs alleging an asbestos claim that is based upon a wrongful death. See R.C. 2307.92(B), (C), and (D). The statute does not specifically require a prima-facie showing regarding other asbestos-related claims. The statute requires each of the foregoing types of plaintiffs to show that a "competent medical authority" has, inter alia, diagnosed an asbestos-related injury. R.C. 2307.91(Z) defines "competent medical authority" as follows:
 "Competent medical authority" means a medical doctor who is providing a diagnosis for purposes of constituting prima-facie evidence of an exposed person's physical impairment that meets the requirements specified in [R.C. 2307.92] and who meets the following requirements:
 (1) The medical doctor is a board-certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist.
 (2) The medical doctor is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person.
 (3) As the basis for the diagnosis, the medical doctor has not relied, in whole or in part, on any of the following:
 (a) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition in violation of any law, regulation, licensing requirement, or medical code of practice of the state in which that examination, test, or screening was conducted;
 (b) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that was conducted without clearly establishing a doctor-patient relationship with the claimant or medical personnel involved in the examination, test, or screening process;
 (c) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that required the claimant to agree to retain the legal services of the law firm sponsoring the examination, test, or screening.
 (4) The medical doctor spends not more than twenty-five per cent of the medical doctor's professional practice time in providing consulting or expert services in connection with actual or potential tort actions, and the medical doctor's medical group, professional corporation, clinic, or other affiliated group earns not more than twenty per cent of its revenue from providing those services.
 {¶ 5} In an attempt to set forth a prima facie case, appellants stated: Danny R. Ackinson s [sic][3] radiological report diagnosed ulcerated distal esophagus cancer. A B-Read report showed small opacities of profusion 0/1 in the mid and lower lung zones bilaterally and circumscribed pleural thickening. Mr. Ackinson also signed an affidavit wherein he testifies he has worked with or in the vicinity of asbestos containing products and recalls the cutting, handling and application of asbestos containing products which produced visible dust to which he was exposed and inhaled. Mr. Ackinson's death certificate states that his cause of death was congestive heart failure and aortic stenosis. The evidence of ulcerated distal esophagus cancer in Mr. Ackinson's throat is proof that asbestos was a substantial contributing factor to Mr. Ackinson's esophageal cancer diagnosis." Appellants also asserted that applying H.B. 292 to their cause of action would be unconstitutionally retroactive and that it does not specifically apply to an esophageal cancer claim.
 {¶ 6} The trial court denied appellants' "motion to prove prima facie case under R.C. 2307 and motion for trial setting." The court determined: (1) R.C. 2305.10 requires that for an asbestos-related cause of action to accrue, a competent medical authority must inform the plaintiff that his injury is related to asbestos exposure; (2) R.C. 2307.92(D) sets forth certain minimum requirements for bringing or maintaining a tort action alleging an asbestos claim that is based upon a wrongful death and they apply no matter what plaintiff alleges is the underlying disease; (3) R.C. 2307.92(B) sets forth minimum requirements for maintaining a tort action alleging an asbestos claim based on a non-malignant condition; (4) R.C. 2307.93(A)(3)(a) provides that the provisions apply to claims that arose before the effective date of the law unless the court finds that a substantive right of the party has been impaired and that it violates Section 28, Article II of the Ohio Constitution; (5) appellant failed to meet the criteria for maintaining a wrongful death claim under R.C. 2307.92(D) — she failed to present evidence that the decedent's death would not have occurred without asbestos exposure; (7) appellant failed to meet the criteria for maintaining an injury claim for a non-malignant condition under R.C. 2307.92(B) — she failed to present evidence that the decedent was diagnosed by a competent medical authority with at least a Class 2 respiratory impairment and asbestosis or diffuse pleural thickening and that the asbestosis or diffuse pleural thickening is a substantial contributing factor to the decedent's physical impairment; (8) R.C. 2307.92 does not set forth specific criteria for maintaining an asbestos claim for esophageal cancer, but in order for a cause of action to accrue based upon bodily injury caused by asbestos exposure, a plaintiff must have been informed by competent medical authority that he has an asbestos related injury under R.C. 2305.10; appellant did not present such evidence and a cause of action for esophageal cancer has yet to accrue; and (9) the statute does not impair appellant's substantive rights; instead, the statutes define previously undefined terms. Thus, the court administratively dismissed appellants' claims.
 {¶ 7} This appeal followed.
 I {¶ 8} In their first assignment of error, appellants assert that the trial court erred by failing to find the asbestos-related claim legislation unconstitutional because the legislation
 {¶ 9} retroactively changes the standard for bringing a claim. Appellants further contend that the trial court improperly concluded that a "competent medical authority," as H.B. 292 defines that term, must diagnose the asbestos-related claims for the claims to accrue under R.C. 2305.10.
 {¶ 10} Appellees contend that the legislation is not unconstitutionally retroactive. Rather, they argue that the statutes are remedial and merely define and clarify terms used in earlier legislative enactments. Appellees further assert that R.C. 2307.93(A)(3)(a), the "savings clause," prevents the legislation from being declared unconstitutionally retroactive. The "savings clause" provides that the legislation does not apply to a pending case if its application would unconstitutionally impair a claimant's vested rights in a particular case.
 {¶ 11} Initially, we state our agreement with appellees that the legislation itself is not unconstitutionally retroactive. R.C. 2307.93(A)(3)(a) provides:
 For any cause of action that arises before the effective date of this section, the provisions set forth in divisions (B), (C), and (D) of [R.C. 2307.92) are to be applied unless the court that has jurisdiction over the case finds both of the following:
 (i) A substantive right of the party has been impaired.
 (ii) That impairment is otherwise in violation of Section 28 of Article II, Ohio Constitution.
Thus, because the legislation itself prohibits its application if it would result in unconstitutional retroactivity, the legislation could not be declared unconstitutionally retroactive. The legislature has left it open for courts to decide, on a case-by-case basis, whether its application to cases prior to the legislation's effective date would be unconstitutionally retroactive. Therefore, we limit our review to whether applying the legislation to appellant's case would be unconstitutionally retroactive.
 "`Retroactive laws and retrospective application of laws have received the near universal distrust of civilizations.' Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 104, 522 N.E.2d 489; see, also, Landgraf v. USI Film Products (1994), 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (noting that `the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic'). In recognition of the `possibility of the unjustness of retroactive legislation,' Van Fossen, 36 Ohio St.3d at 104, 522 N.E.2d 489, Section 28, Article II of the Ohio Constitution provides that the General Assembly `shall have no power to pass retroactive laws.'"
State v. Walls, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 9.
 {¶ 12} The Ohio Supreme Court has interpreted Section 28, Article II
of the Ohio Constitution to mean that the Ohio General Assembly may not pass retroactive, substantive laws. See Smith v. Smith,109 Ohio St.3d 285, 2006-Ohio-2419, 847 N.E.2d 414, at ¶ 6; Bielat v. Bielat (2000),87 Ohio St.3d 350, 352-353, 721 N.E.2d 28; State ex rel. Slaughter v.Indus. Comm. (1937), 132 Ohio St. 537, 542, 9 N.E.2d 505 (stating that the prohibition against retroactive laws "has reference only to laws which create and define substantive rights, and has no reference to remedial legislation"). Generally, a substantive statute is one that "impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction." Bielat, 87 Ohio St.3d at 354. In contrast, retroactive, remedial laws do not violate Section 28, Article II of the Ohio Constitution. State v. Cook (1998), 83 Ohio St.3d 404, 411,700 N.E.2d 570; Van Fossen, 36 Ohio St.3d at 107. "[R]emedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right." State v. Cook (1998), 83 Ohio St.3d 404, 411,700 N.E.2d 570, citing Van Fossen v. Babcock Wilson Co. (1988),36 Ohio St.3d 100, 107, 522 N.E.2d 489.
 {¶ 13} Thus, to determine whether a law is unconstitutionally retroactive, a court must employ a two-part analysis: (1) a court must evaluate whether the General Assembly intended the statute to apply retroactively; and (2) the court must determine whether the statute is remedial or substantive.
 {¶ 14} In Walls, the court explained the first part of the analysis:
 "Because R.C. 1.48 establishes a presumption that statutes operate prospectively only, `[t]he issue of whether a statute may constitutionally be applied retrospectively does not arise unless there has been a prior determination that the General Assembly specified that the statute so apply.' Van Fossen, paragraph one of the syllabus. If there is no `"`clear indication of retroactive application, then the statute may only apply to cases which arise subsequent to its enactment.'"` Id. at 106, quoting Kiser v. Coleman (1986), 28 Ohio St.3d 259, 262, 503 N.E.2d 753. If we can find, however, a `clearly expressed legislative intent' that a statute apply retroactively, we proceed to the second step, which entails an analysis of whether the challenged statute is substantive or remedial. Cook, 83 Ohio St.3d at 410; see, also, Van Fossen, paragraph two of the syllabus."
Walls, at ¶ 10. Thus, a court's inquiry into whether a statute may be constitutionally applied retroactively continues only after an initial finding that the General Assembly expressly intended that the statute be applied retroactively. Van Fossen, paragraph two of the syllabus.
 {¶ 15} In the case at bar, the General Assembly did express its intent for the legislation to apply retroactively. R.C. 2307.93 states that R.C. Chapter 2307 applies to cases pending as of the effective date of the legislation. Thus, we must consider whether the legislation is substantive or remedial.
 {¶ 16} "[A] statute is substantive when it does any of the following: impairs or takes away vested rights; affects an accrued substantive right; imposes new or additional burdens, duties, obligations or liabilities as to a past transaction; creates a new right out of an act which gave no right and imposed no obligation when it occurred; creates a new right; gives rise to or takes away the right to sue or defend actions at law." Van Fossen, 36 Ohio St.3d at 107 (citations omitted); see, also, State v. Cook (1998), 83 Ohio St.3d 404, 411, 700 N.E.2d 570. "In common usage, `substantive' means `creating and defining rights and duties' or `having substance: involving matters of major or practical importance to all concerned[.]' Merriam-Webster's Collegiate Dictionary (11 Ed. 2003) 1245. A substantive law is the `part of the law that creates, defines, and regulates the rights, duties, and powers of parties.' Black's Law Dictionary (7 Ed. 1999) 1443." Gen. Elec. Lightingv. Koncelik, Franklin App. Nos. 05AP-310 and 05AP-323, 2006-Ohio-1655, at ¶ 21.
 {¶ 17} Conversely, "[r]emedial laws are those affecting only the remedy provided. These include laws which merely substitute a new or more appropriate remedy for the enforcement of an existing right."Van Fossen, 36 Ohio St.3d at 107 (footnotes omitted). "[L]aws which relate to procedures are ordinarily remedial in nature, including rules of practice, courses of procedure and methods of review."Van Fossen, 36 Ohio St.3d at 108 (citations omitted). Remedial laws are "those laws affecting merely `the methods and procedure[s] by which rights are recognized, protected and enforced, not * * * the rights themselves.'" Bielat, 87 Ohio St.3d at 354, quoting Weil v. Taxicabs ofCincinnati, Inc. (1942), 139 Ohio St. 198, 205, 39 N.E.2d 148; see, also, State v. Walls, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 15. Remedial laws affect only the remedy provided, and include laws that "`merely substitute a new or more appropriate remedy for the enforcement of an existing right.'" Cincinnati School Dist. Bd. of Edn.v. Hamilton Cty. Bd. of Revision (2001), 91 Ohio St.3d 308, 316,744 N.E.2d 751, quoting State v. Cook (1998), 83 Ohio St.3d 404, 411,700 N.E.2d 570; see, also, State ex rel. Romans v. Elder Beerman StoresCorp., 100 Ohio St.3d 165, 2003-Ohio-5363, 797 N.E.2d 82, at ¶ 15 (stating that remedial provisions are just what the name denotes-those that affect only the remedy provided). "`A statute undertaking to provide a rule of practice, a course of procedure or a method of review, is in its very nature and essence a remedial statute.'" Lewis v.Connor (1985), 21 Ohio St.3d 1, 3, 487 N.E.2d 285, quoting Miami v.Dayton (1915), 92 Ohio St. 215, 219, 110 N.E. 726. "Rather than addressing substantive rights, `remedial statutes involve procedural rights or change the procedure for effecting a remedy. They do not, however, create substantive rights that had no prior existence in law or contract.' Dale Baker Oldsmobile v. Fiat Motors of N. Am., (1986),794 F.2d 213, 217." Euclid v. Sattler (2001), 142 Ohio App.3d 538, 540,756 N.E.2d 201; see, also, State ex rel. Kilbane v. Indus. Comm. (2001),91 Ohio St.3d 258, 259, 744 N.E.2d 708 ("Remedial laws are those that substitute a new or different remedy for the enforcement of an accrued right, as compared to the right itself, and generally come in the form of `rules of practice, courses of procedure, or methods of review.'").
 {¶ 18} In Van Fossen, the Ohio Supreme Court determined that R.C. 4121.80(G) was unconstitutionally retroactive. The statute provided a definition of the term "substantially certain": "`Substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition, or death." Previously, the Ohio Supreme Court had defined substantial certainty as follows: "`Thus, a specific intent to injure is not an essential element of an intentional tort where the actor proceeds despite a perceived threat of harm to others which is substantially certain * * * to occur * * *.'" Id. at 108-109, quoting Jones v. VIP Development Co. (1984), 15 Ohio St.3d 90,95, 472 N.E.2d 1046. The Van Fossen court stated that applying the new statute "would remove appellees' potentially viable, court-enunciated cause of action by imposing a new, more difficult statutory restriction upon appellees' ability to bring the instant action." Id. at 109. The court concluded that the statute "removes an employee's potential cause of action against his employer by imposing a new, more difficult standard for the `intent' requirement of a workers' compensation intentional tort than that established [under common law]." Id., paragraph four of the syllabus. The court concluded that this was a "new standard [that] constitute[d] a limitation, or denial of, a substantive right." Id.
 {¶ 19} In Kunkler, the court determined that R.C. 4121.80(G)(1) was an unconstitutional, substantive, retroactive law. The court rejected the argument that "the new statute merely reiterates the common-law definition of an intentional tort * * *." Id. at 138. The court explained: "if the statute works no change in the common-law definition of intentional tort, the exercise in determining whether the statute applies to this case would be pointless." Id. "Since the new statute purports to create rights, duties and obligations, it is (to that extent) substantive law." Id.
 {¶ 20} In Cook, the court determined that the sexual offender registration requirements of R.C. Chapter 2950 were not unconstitutionally retroactive. The court noted that "under the former provisions, habitual sex offenders were already required to register with their county sheriff. Only the frequency and duration of the registration requirements have changed. * * * * Further, the number of classifications has increased from one * * * to three * * * ." Id. at 411 (citations omitted). The court concluded that "the registration and address verification provisions of R.C. Chapter 2950 are de minimis procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950." Cook, 83 Ohio St.3d at 412.
 {¶ 21} In Bielat, the court concluded that R.C. 1709.09(A) and1709.11(D) constituted "remedial, curative statutes that merely provide a framework by which parties to certain investment accounts can more readily enforce their intent to designate a pay-on-death beneficiary." Id. at 354. "[T]he relevant provisions of R.C. Chapter 1709 remedially recognize, protect, and enforce the contractual rights of parties to certain securities investment accounts to designate a pay-on-death beneficiary. Before the Act, Ohio courts did not consistently recognize and enforce similar rights." Id. at 354-55. The new legislation "cure[d] a conflict between the pay-on-death registrations permitted in the Act and the formal requirements of our Statute of Wills." Id. at 356.
 {¶ 22} In Kilbane, the court held that the settlement provisions in former R.C. 4123.65 were a course of procedure as part of the process for enforcing a right to receive workers compensation and, thus, was remedial legislation. The legislature had amended R.C. 4123.65 to remove the provision for Industrial Commission hearings on applications for settlement approval in State Fund claims.
 {¶ 23} Two Ohio common pleas court cases have concluded that H.B. 292 constitutes unconstitutional retroactive legislation when applied to cases pending before the legislation's effective date. In In Re SpecialDocket No. 73958, January 6, 2006, three Cuyahoga County Common Pleas Court judges determined that retroactively applying H.B. 292 violates Section 28, Article II of the Ohio Constitution because it requires "a plaintiff who filed his suit prior to the effective date of the statute to meet an evidentiary threshold that extends above and beyond the common law standard — the standard that existed at the time [the] plaintiff filed his claim." The court noted that Ohio common law required "a plaintiff seeking redress for asbestos-related injuries * * * to show that asbestos had caused an alteration of the lining of the lung without any requirement that he meet certain medical criteria before filing his claim," (citing In re Cuyahoga County AsbestosCases (1998), 127 Ohio App.3d 358, 364, 713 N.E.2d 20),[4] and that H.B. 292 imposed new requirements regarding the quality of medical evidence to establish a prima facie asbestos-related claim. The court stated that the legislation "can retroactively eliminate the claims of those plaintiffs whose right to bring suit not only vested, but also was exercised." Because the court found application of the act unconstitutional, it applied R.C. 2307.93(A)(3)(b) which states that "in the event a court finds the retroactive application of the act unconstitutional, `the court shall determine whether the plaintiff has failed to provide sufficient evidence to support the plaintiff's cause of action or the right to relief under the law that is in effect prior to the effective date of this section.'" If the plaintiff does not meet the prior standard, the court should administratively dismiss the claims. See R.C. 2307.93(A)(3)(c).
 {¶ 24} In Thorton v. A-Best Products, Cuyahoga C.P. Nos. CV-99-395724, CV-99-386916, CV-01-450637, CV-95-293526, CV-95-293588-072, CV-95-296215, CV-03-499468, CV-95-293312-002, CV-00-420647, CV-02-482141, the court concluded that applying H.B. 292 to the plaintiffs' case would be unconstitutionally retroactive. The court determined that H.B. 292 is substantive, as opposed to remedial, legislation: "[T]he Act's imposition of new, higher medical standards for asbestos-related claims is a substantive alteration of existing Ohio law which will have the effect of retroactively eliminating the claims of plaintiffs whose rights to bring suit previously vested." While the court concluded that applying H.B. 292 to the plaintiffs' case would be unconstitutionally retroactive, it did not declare the legislation itself unconstitutional. The court found that the legislation cannot be unconstitutionally retroactive because R.C. 2307.93(A)(3)(a) precludes its application if to do so would violate Section 28, Article II of the Ohio Constitution.
 {¶ 25} The court rejected the defendants' argument that the Act did not create a new standard for asbestos-related claims-similar to the argument appellees raise in the case sub judice:
 "Under R.C. 2305.10, Defendants argue it was the law of Ohio that an asbestos personal injury claim does not accrue until the plaintiff has developed an asbestos-related bodily injury and has been told by `competent medical authority' that his injury was caused by his exposure to asbestos. However, in 1982 the legislature did not define the terms `competent medical authority' and `injury' in R.C. 2305.10. Defendants argue that the Act does not change the requirements for the accrual of an asbestos-related injury. Rather, the Act establishes minimum medical requirements and prima facie provisions to provide definitions and substantive standards for the provisions included by the legislature in R.C. 2305.10."
In rejecting the defendants' argument, the court noted that H.B. 292 requires the diagnosis of a "competent medical authority" and provides a specific definition of that phrase. "In contrast, R.C. 2305.10 does not define `competent medical authority.' In the absence of a statutory definition, that meaning is supplied by common usage and common law." The court noted that no definition exists in the case law and thus, H.B. 292 requires medical experts "to `jump additional hurdles' before they are permitted to walk into court."
 {¶ 26} In the case at bar, applying R.C. Chapter 2307 to appellants' cause of action would remove their potentially viable, common law cause of action by imposing a new, more difficult statutory standard upon their ability to maintain the asbestos-related claims. The statute requires a plaintiff filing certain asbestos-related claims to present "competent medical authority" to establish a prima facie case. The statute specifically defines "competent medical authority" and places limits on who qualifies as "competent medical authority." Previously, no Ohio court had placed such restrictions on what constituted competent medical authority. Instead, courts generally accepted medical authority that complied with the Rules of Evidence. This represents a change in the law, not simply a change in procedure or in the remedy provided. Therefore, the change is substantive and applying R.C. Chapter 2307 to appellants' asbestos-related claims would be unconstitutional. The legislation creates a new standard for maintaining an asbestos claim that was pending before the legislation's effective date and prohibits appellants from maintaining this cause of action unless they comply with the new statutory requirements. Because these requirements represent a substantive change in the law, they are not mere remedial requirements. Instead, they are substantive changes and may not be constitutionally applied retroactively. However, because the legislation contains a savings provision, the legislation itself is not unconstitutional. Thus, we conclude that applying H.B. 292 to appellants asbestos-related claims would be an unconstitutionally retroactive application.
 {¶ 27} We disagree with appellees' assertion that the General Assembly, by enacting H.B. 292, simply "clarified" the law regarding asbestos-related litigation and R.C. 2305.10. In Nationwide Mut. Ins.Co. v. Kidwell (1996), 117 Ohio App.3d 633, 642-643, 691 N.E.2d 309, we observed that the General Assembly has the authority to clarify its prior acts. See Martin v. Martin (1993), 66 Ohio St.3d 110,609 N.E.2d 537, fn. 2; Ohio Hosp. Assn. v. Ohio Dept. of Human Serv. (1991),62 Ohio St.3d 97, 579 N.E.2d 695, fn. 4; State v. Johnson (1986),23 Ohio St.3d 127, 131, 491 N.E.2d 1138; Hearing v. Wylie (1962),173 Ohio St. 221, 224, 180 N.E.2d 921. We explained:
 "When the Ohio General Assembly clarifies a prior Act, there is no question of retroactivity. If, however, the clarification substantially alters substantive rights, any attempt to make the clarification apply retroactively violates Section 28, Article II, Ohio Constitution. In Hearing [v. Wylie (1962), 173 Ohio St. 221, 224, 180 N.E.2d 921], the court wrote as follows:
 'Appellee has argued that the change made by the General Assembly in Section 4123.01, Revised Code, was not an amendment but was merely a clarification of what the General Assembly had always considered the law to be. There is, therefore, according to appellee, no question of retroactiveness so far as the application of the amendment to this action is concerned.
 With this contention we cannot agree. The General Assembly was aware of the decisions of this court interpreting the word, "injury." Those interpretations defined substantive rights given to the injured workmen to be compensated for their injuries. Those substantive rights were substantially altered by the General Assembly when it amended the definition of "injury." To attempt to make that substantive change applicable to actions pending at the time of the change is clearly an attempt to make the amendment apply retroactively and is thus violative of Section 28, Article II, Constitution of Ohio.' (Emphasis added.) Id., 173 Ohio St. at 224, 19 O.O.2d at 43-44, 180 N.E.2d at 923."
Nationwide Mut. Ins. Co. v. Kidwell (1996), 117 Ohio App.3d 633,642-643, 691 N.E.2d 309.
 {¶ 28} In the case sub judice, H.B. 292 does not simply "clarify" prior legislation. Rather, H.B. 292 represents entirely new legislation that changes the legal requirements for filing an asbestos-related claim. Before the legislation, a plaintiff was not required to set forth a prima-facie case. To the extent the legislation attempts to change the definition of "competent medical authority" in R.C. 2305.10, it is unconstitutional retroactive legislation when applied to cases pending before the effective date. Before the legislation's effective date, "competent medical authority" did not have the same stringent requirements that the legislation imposes. Instead, whether a plaintiff presented "competent medical authority" generally was determined by examining the rules of evidence. By purporting to change the definition of "competent medical authority as used in R.C. 2305.10[5], the legislation effects a substantive change in the meaning of that phrase.
 {¶ 29} Consequently, we conclude that H.B. 292 cannot constitutionally be retroactively applied to appellants' asbestos-related claims. We therefore remand the case to the trial court so that it can evaluate appellants' cause of action under Ohio common law.
 {¶ 30} Accordingly, we hereby sustain appellants' first assignment of error, reverse the trial court's judgment and remand the matter for further proceedings. Our disposition of appellants' first assignment of error renders their remaining assignments of error moot and we will not address them. See App. R. 12(A)(1)(c).
[2] The other defendants are: (1) Beazer East, Inc.; (2) Clark Industrial Insulation Co.; (3) Crown Cork and Seal Company, Inc.; (4) CSR Limited; (5) Foseco, Inc.; (6) Foster Wheeler Energy Corporation; (7) General Refractories Company; (8) Metropolitan Life Insurance Company; (9) Minnesota Mining and Manufacturing Company; (10) Ohio Valley Insulating Co., Inc.; (11) Owens-Illinois Corporation, Inc.; (12) Rapid-American Corp.; (13) Union Boiler Company; (14) Viacom, Inc.; (15) R.E. Kramig, Inc.; (16) McGraw Construction Company, Inc.; (17) McGraw/Kokosing, Inc.; (18) Frank W. Schaeffer, Inc.; (19) International Minerals and Chemical Corporation; (20) George P. Reintjes Company; (21) International Chemicals Company; (22) General Electric Company; (23) Georgia Pacific Corporation; (24) Uniroyal Holding, Inc.; (25) John Crane, Inc.; (26) Amchem Products, Inc.; (27) Certainteed Corp.; (28) Dana Corp.; (29) Maremont Corp.; (30) Pfizer, Inc.; (31) Quigley Co., Inc.; (32) Union Carbide Chemical and Plastics Co., Inc; (33) Garlock, Inc.; (34) A.W. Chesterton Co.; (35) Mobile Oil Corp. aka Mobil Oil Corp.; (36) Wheeler Protective Apparel, Inc.; (37) Ingersoll-Rand Company; (38) D.B. Riley, Inc.; (39) Allied Corporation; (40) Lincoln Electric Co.; (41) Wagner Electric Company; (42) Airco, Inc.; (43) Hobart Brothers Company; (44) Asarco, Inc.; (45) Cleaver Brooks Company; (46) Uniroyal, Inc.; (47) H.B. Fuller Co.; (48) Norton Company; (49) Industrial Holdings Company; (50) Bigelow Litpak Company; (51) John Doe 1 through 100.
[3] Appellants misspelled Ackison's name throughout the foregoing paragraph as contained in "Plaintiff Danny Ackison's Motion to Prove Plaintiffs' Prima Facie Case Under R.C. 2307 and Motion for Trial Setting."
[4] The Asbestos Cases court explained the common law standard as follows:
 "[I]n Ohio the asbestos-related pleural thickening or pleural plaque, which is an alteration to the lining of the lung, constitutes physical harm, and as such satisfies the injury requirement for a cause of action for negligent failure to warn or for a strict products liability claim, even if no other harm is caused by asbestos. Verbryke v. Owens-Corning Fiberglas Corp. (1992), 84 Ohio App.3d 388, 616 N.E.2d 1162. The Verbryke court noted that `even if Robert Verbryke's disease is asymptomatic it does not necessarily mean he is unharmed in the sense of the traditional negligence action.' Verbryke, supra, at 395, 616 N.E.2d at 1167."
Id. at 364.
[5] We also question whether H.B. 292's definition of "competent medical authority" applies to R.C. 2305.10. The definition itself states that "competent medical authority" means a medical doctor who is providing a diagnosis for purposes of establishing a prima facie case under R.C. 2307.92; it does not state that it means a medical doctor who is providing a diagnosis for purposes of determining whether a claim accrued under R.C. 2305.10.
JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and the matter remanded for further proceedings consistent with this opinion. Appellant shall recover of appellees costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, P.J.: Concurs in Judgment Only
Abele, J. McFarland, J.: Concur in Judgment Opinion
William H. Harsha Presiding Judge, Peter B. Abele, Judge, Matthew W. McFarland, Judge
 APPENDIX
Counsel for Appellees H.B. Fuller Co., Industrial Holdings Corp., 3M Company, Union Carbide Corp., Amchem Products, Inc. and Certainteed Corp.: Richard D. Schuster, Nina I. Webb-Lawton, and John N. Boyer, 52 East Gay Street, Columbus, Ohio 43216-1008
Counsel for Honeywell International, Inc.: Sharon J. Zealey and William M. Huse, 201 East Fifth Street, Suite 1700, Cincinnati, Ohio 45202
Counsel for The BOC Group, Inc. fka Airco, Inc., Hobart Brothers Company and Lincoln Electric Company
Counsel for A.W. Chesterton Company: Matthew M. Daiker, 1150 Huntington Building, 925 Euclid Avenue, Cleveland, Ohio 44115-1414
Counsel for General Electric Company and CBS Corporation: Reginald S. Kramer, 195 South Main Street, Suite 300, Akron, Ohio 44308-1314
Counsel for International Minerals and Chemical Corporation: Thomas L. Eagen, Jr. and Christine Carey Steele, 2349 Victory Parkway, Cincinnati, Ohio 45206
Counsel for Beazer East, Inc. and Ingersoll-Rand Company: Kevin C. Alexandersen, John A. Valenti, and Colleen A. Mountcastle, Sixth Floor-Bulkley Building, 1501 Euclid Avenue, Cleveland, Ohio 44115
Counsel for Owens-Illinois, Inc.: Rebecca C. Sechrist, One SeaGate, Suite 650, Toledo, Ohio 43604
Counsel for John Crane, Inc.: David L. Day, 380 South Fifth Street, Suite 3, Columbus, Ohio 43215 Counsel for Ohio Valley Insulating Company, Inc.: Bruce P. Mandel and Kurt S. Sigried, 1660 West Second Street, Suite 1100, Cleveland, Ohio 44113-1448