ACKISON, APPELLEE, ET AL., *v.* ANCHOR PACKING COMPANY ET AL., APPELLANTS.

[Cite as *Ackison v. Anchor Packing Co.,*
120 Ohio St.3d 228, 2008-Ohio-5243.]

(Nos. 2007–0219 and 2007–0415—Submitted November 28, 2007—Decided October 15, 2008.)

Cupp, J.

{¶ 1} In this appeal, we conclude that requirements in R.C. 2307.91, 2307.92, and 2307.93 pertaining to asbestos-exposure claims are remedial and procedural and may be applied without offending the Retroactivity Clause of the Ohio Constitution to cases pending on September 2, 2004.

## I

{¶ 2} In May 2004, Linda Ackison, widow and administrator of the estate of Danny Ackison, filed suit against her husband's former employer and multiple other defendants alleging that her husband's illness and death were caused by long-term exposure to asbestos in his workplace. Although Ackison advanced other claims in her complaint, the only cause of action at issue in this appeal is her claim for nonmalignant asbestosis.

{¶ 3} On September 2, 2004, Am.Sub.H.B. No. 292 ("H.B. 292") became effective. 150 Ohio Laws, Part III, 3970. This legislation extensively revised state laws governing asbestos litigation and was in response to the legislative finding that "[t]he current asbestos personal injury litigation system is unfair and inefficient, imposing a severe burden on litigants and taxpayers alike." H.B. 292, Section 3(A)(2), 150 Ohio Laws, Part III, 3988.

{¶ 4} Among other sections, this bill enacted R.C. 2307.91 (definitions), 2307.92 (requirements for prima facie showing of physical impairment in certain asbestos claims), and 2307.93 (filing of reports and test results showing physical impairment; dismissals). These provisions establish certain threshold requirements. Among these requirements are that no person shall bring or maintain certain kinds of asbestos claims (including claims alleging a nonmalignant condition) without filing with the court certain qualifying medical evidence of physical impairment, and that such evidence must be supported by the written opinion of a competent medical authority stating that the claimant's exposure to asbestos was a substantial contributing factor to his medical condition. R.C. 2307.92. The claim of any plaintiff who does not file the required preliminary medical evidence and physician's statement is to be administratively dismissed "without prejudice" with the court retaining jurisdiction, meaning that a plaintiff would not be barred from reinstating the claim in the future when and if the plaintiff could meet the threshold evidentiary requirements. R.C. 2307.93(C). The legislation also provides that the threshold evidentiary requirements and administrative-dismissal provision be applied to all asbestos cases pending in Ohio courts, regardless of whether they were filed before or after the effective date of H.B. 292. R.C. 2307.93(A)(2) and (3).

{¶ 5} The trial court determined that the revised asbestos legislation applied to Ackison and that the legislation did not impair any substantive rights so as to

violate Section 28, Article II of the Ohio Constitution. The trial court also administratively dismissed Ackison's claims because Ackison had failed to file the statutorily required documentation.

{¶ 6} Ackison appealed the trial court's ruling. The court of appeals reversed and reinstated the case. In its opinion, the court of appeals held that the retroactive application to Ackison's claim of the H.B. 292 evidentiary requirements was unconstitutional. The court stated that because Ackison's suit had been filed prior to the effective date of the statutory changes, she had a vested substantive right to pursue recovery for her husband's illness and death under the statutes that were in effect at the time her complaint was filed.

{¶ 7} The court of appeals certified that its decision conflicted with three cases from the Twelfth District Court of Appeals, each of which held that retroactive application of the H.B. 292 standards was not unconstitutional. See *Wilson v. AC&S, Inc.*, 169 Ohio App.3d 720, 2006-Ohio-6704, 864 N.E.2d 682; *Staley v. AC&S, Inc.*, Butler App. No. CA2006–06–133, 2006-Ohio-7033, 2006 WL 3833883; and *Stahlheber v. Lac D'Amiante Du Quebec, LTEE.*, Butler App. No. CA2006–06–134, 2006-Ohio-7034, 2006 WL 3833888.

{¶ 8} We accepted jurisdiction and recognized the conflict on the following question: "Can R.C. 2307.91, 2307.92, and 2307.93 be applied to cases already pending on September 2, 2004?" *Ackison v. Anchor Packing Co.*, 113 Ohio St.3d 1465, 2007-Ohio-1722, 864 N.E.2d 652, 113 Ohio St.3d 1464, 2007-Ohio-1722, 864 N.E.2d 651.

## II

{¶ 9} The essential question in this case is whether R.C. 2307.91, 2307.92, and 2307.93 can validly be applied to Ackison's claims or whether these statutory provisions are unconstitutionally retroactive.

{¶ 10} The Ohio Constitution provides that the "general assembly shall have no power to pass retroactive laws * * *." Section 28, Article II, Constitution. Yet "retroactivity itself is not always forbidden by Ohio law. Though the language of Section 28, Article II of the Ohio Constitution provides that the General Assembly 'shall have no power to pass retroactive laws,' Ohio courts have long recognized that there is a crucial distinction between statutes that merely apply retroactively (or 'retrospectively') and those that do so in a manner that offends our Constitution." *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, 353, 721 N.E.2d 28.

## A

{¶ 11} Guided by R.C. 1.48, which provides that a statute is presumed to apply prospectively unless expressly declared to be retroactive, this court has developed

a two-part inquiry to determine whether a statute is unconstitutionally retroactive. We recently summarized this test as follows:

{¶ 12} "First, the reviewing court must determine as a threshold matter whether the statute is expressly made retroactive. [*State v.*] *LaSalle*, 96 Ohio St.3d [178, 2002-Ohio-4009], 772 N.E.2d 1172, citing *Van Fossen* [*v. Babcock & Wilcox Co.* (1988) ], 36 Ohio St.3d 100, 522 N.E.2d 489, at paragraphs one and two of the syllabus. The General Assembly's failure to clearly enunciate retroactivity ends the analysis, and the relevant statute may be applied only prospectively. Id. If a statute is clearly retroactive, though, the reviewing court must then determine whether it is substantive or remedial in nature. *LaSalle* [96 Ohio St.3d 178, 2002-Ohio-4009], 772 N.E.2d 1172." *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 10.

{¶ 13} In this case, the General Assembly expressly directed that the prima facie filing requirements at issue apply to cases pending on—and thus filed before—the effective date of the legislation. R.C. 2307.93(A)(2) and (3). Because the General Assembly so specified, we must next consider "whether the statute is substantive, rendering it *unconstitutionally* retroactive, as opposed to merely remedial." (Emphasis sic.) *Bielat*, 87 Ohio St.3d at 353, 721 N.E.2d 28, citing *State v. Cook* (1998), 83 Ohio St.3d 404, 410–411, 700 N.E.2d 570.

## B

{¶ 14} In determining whether a statute is substantive or remedial, we have established the following parameters:

{¶ 15} "A statute is 'substantive' if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligation[s], or liabilities as to a past transaction, or creates a new right. * * * Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Cook*, 83 Ohio St.3d at 411, 700 N.E.2d 570, citing *Van Fossen*, 36 Ohio St.3d at 107, 522 N.E.2d 489. "Further, while we have recognized the occasional substantive effect, we have found that it is generally true that laws that relate to procedures are ordinarily remedial in nature." Id.

{¶ 16} We have previously concluded that R.C. 2307.92 and 2307.93 "do not relate to the rights and duties that give rise to this cause of action or otherwise make it more difficult for a claimant to succeed on the merits of a claim. Rather, they pertain to the machinery for carrying on a suit. They are therefore procedural in nature, not substantive." *Norfolk S. Ry. Co. v. Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, 875 N.E.2d 919, ¶ 17. We reiterate today that the

requirements in R.C. 2307.92 and 2307.93 are remedial and procedural in nature and are, therefore, not unconstitutionally retroactive.

{¶ 17} As we have previously recognized, these two statutes establish "a procedural prioritization" of asbestos-related cases. Id. at ¶ 16. "Simply put, these statutes create a procedure to prioritize the administration and resolution of a cause of action that already exists. No new substantive burdens are placed on claimants * * *." Id. Instead, the enactments "merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Cook*, 83 Ohio St.3d at 411, 700 N.E.2d 570.

## III

{¶ 18} Despite our conclusions in *Bogle*, Ackison argues that various provisions of H.B. 292 are unconstitutional as applied to her claim because they impair vested rights and affect accrued substantive rights by altering substantive common-law rules pertaining to asbestos claims. Because Ackison asserts an "as applied" challenge to the statute, she "bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statutes unconstitutional and void when applied to those facts." *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 181, citing *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 38, and *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, paragraph six of the syllabus.

{¶ 19} Ackison's chief argument in this regard is that before the enactment of H.B. 292, asbestos-related conditions were compensable under Ohio law when there was merely an alteration of the lungs (such as pleural thickening), irrespective of whether any impairment or disease had developed. Assuming for purposes of argument that the common law can be sufficiently settled to give rise to a vested right to its application, we must find, in order to accept her argument, that common-law liability existed in Ohio for asymptomatic pleural thickening at the time Ackison's claim was filed.

{¶ 20} Before the enactment of H.B. 292, there was no statewide standard for what constituted an "injury" giving rise to an asbestos claim. Indeed, this court did not address that question when it reviewed former R.C. 2305.10 with respect to when an asbestos claim accrues. *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727. Although this court held in *O'Stricker* that an asbestos plaintiff's cause of action arises "upon the date on which the plaintiff is informed by competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first," id. at 91, 4 OBR 335, 447 N.E.2d 727, the court did not define what constitutes an injury in an

asbestos-exposure claim. Only two Ohio appellate court decisions address the issue.

{¶ 21} In *Verbryke v. Owens–Corning Fiberglas Corp.* (1992), 84 Ohio App.3d 388, 616 N.E.2d 1162, the Sixth District Court of Appeals stated that "pleural plaque or pleural thickening is an alteration to the lining of the lung. Accordingly, pleural plaque or thickening meets the definition of 'bodily harm,' which is a subspecies of 'physical harm' and thus satisfies the injury requirements of Sections 388 and 402A of the Restatement [of the Law 2d, Torts (1965)]." Id. at 395, 616 N.E.2d 1162. This principle was later cited approvingly by the Eight District Court of Appeals in *In re Cuyahoga Cty. Asbestos Cases* (1998), 127 Ohio App.3d 358, 364, 713 N.E.2d 20.

{¶ 22} The *Verbryke* court's analysis was predicated upon a reading of several sections of the Restatement of Torts together (Sections 388, 402A, 7, and 15), with the conclusion that impairment to the body consists of an "alteration to the structure of the body even though no other harm is caused." *Verbryke,* 84 Ohio App.3d at 395, 616 N.E.2d 1162 (citing Comment a to Section 15 of the Restatement). In doing so, the *Verbryke* court rejected the analysis of a Maryland court that reached the opposite conclusion.

{¶ 23} In *Owens–Illinois, Inc. v. Armstrong* (1991), 87 Md.App. 699, 591 A.2d 544, reversed in part on other grounds (1992), 326 Md. 107, 604 A.2d 47, the Court of Special Appeals of Maryland held that the Restatement did not support the conclusion that pleural plaque and pleural thickening alone were sufficient to constitute harm. Id. at 732–735, 591 A.2d 544. The Maryland court noted that Section 15 of the Restatement was inapposite "because it broadly defines bodily harm only in the context of an action based on the intentional tort of battery." Id. at 735, 591 A.2d 544. Indeed, Section 15 of the Restatement relates to harm caused by intentional torts.

{¶ 24} We determine that the Maryland court's approach is the better-reasoned one. The *Verbryke* court's incorporation of Section 15 into its chain of logic incorrectly imputed intentional-tort principles into an analysis of negligence. Thus, the *Verbryke* decision is based upon a faulty interpretation of the Restatement—an interpretation that also has been rejected by courts in other states. In fact, the latest draft of the Restatement offers the following comment to Section 4, which defines physical harm: " 'Bodily harm' is employed to mean *physical impairment* to the human body and includes physical injury, illness, disease, and death." (Emphasis added.) Proposed Final Draft No. 1, Restatement of the Law 3d, Torts (Apr. 6, 2005), Section 4, Comment a. A Reporter's Note contains the following discussion specifically related to asbestos claims:

{¶ 25} "An unfortunate and aberrational exception to the [general tendency] of small or trivial harms [to remain unlitigated] explained in this Comment is

asbestos claims by plaintiffs who suffer no clinical symptoms but who have abnormal lung X-rays, a condition known as pleural plaque. These claims exist only because of the massive number of such claimants and the efficiencies of aggregating such claims to make them economically viable for litigation. Some courts have responded by requiring that an asbestos plaintiff prove the existence of clinical symptoms before sufficient bodily injury exists. See, e.g., *In re Haw. Fed. Asbestos Cases*, 734 ·F.Supp. 1563 (D.Haw.1990) (pleural plaque does not constitute legally cognizable injury); *Owens–Ill. v. Armstrong*, 87 Md.App. 699, 591 A.2d 544 (1991) (pleural scarring does not entail physical harm that is compensable in tort), aff'd in relevant part, 326 Md. 107, 604 A.2d 47 (1992); *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993) (pleural plaque is not a legally cognizable injury). * * * But see *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129 (5th Cir.1985) (applying Texas law) (cause of action accrued when plaintiff suffered pleural plaque)." Reporter's Note, Tentative Draft, Restatement of Torts 3d, Section 4, Comment c.

{¶ 26} The *Verbryke* court's holding that pleural thickening alone is sufficient to constitute an injury was not the common law of this state such that Ackison had a vested right to its application in her case. This court has never held that asymptomatic pleural thickening is, by itself, sufficient to establish a compensable injury for asbestos exposure. *Verbryke* and *Cuyahoga Cty. Asbestos Cases*, 127 Ohio App.3d 358, 713 N.E.2d 20, are the only two appellate decisions that have addressed the issue in Ohio, but those decisions rest on a misreading of the Restatement. Accordingly, we conclude that Ackison has not established that the settled common law in Ohio permitted tort recovery for asymptomatic pleural thickening in asbestos exposure cases prior to the enactment of H.B. 292.

{¶ 27} Moreover, with respect to this case specifically, although there was evidence of pleural thickening in Mr. Ackison's lungs, he had not been diagnosed with any asbestos-related illness or impairment. The provisions of H.B. 292 at issue here did not prevent Ackison from pursuing her claim. Although the legislation caused a hold to be placed on the claim, the hold did not by itself extinguish the claim. Thus, Ackison has failed to carry her burden of proving that the statute was unconstitutional and void when applied to the facts of this case.

## IV

{¶ 28} Ackison's remaining arguments generally relate to the definition of certain terms in R.C. 2307.91, as enacted by H.B. 292. First, Ackison claims that the definition of "competent medical authority" contained in R.C. 2307.91(Z) substantively alters evidentiary requirements for asbestos claims. (See Appendix for text of R.C. 2307.91(Z).)

{¶ 29} Before the enactment of R.C. 2307.91, the term "competent medical authority" was not defined by either statute or case law. By choosing to define that term, the legislature did not take away Ackison's right to pursue her claim. Nor did the definition alter the quantum of proof necessary for a plaintiff to prevail in an asbestos-related claim. Rather, it merely defined the procedural framework by which trial courts are to adjudicate such claims. The definition of competent medical authority pertains to the witness's competence to testify and is, in essence, more akin to a rule of evidence. As such, it is procedural in nature. Compare *Denicola v. Providence Hosp.* (1979), 57 Ohio St.2d 115, 11 O.O.3d 290, 387 N.E.2d 231 (new statute defining qualifications of expert witnesses in a medical claim is procedural rather than substantive). Therefore, the definition does not alter a vested substantive right possessed by Ackison; she did not have a vested right to have the undefined term remain undefined.

{¶ 30} Second, Ackison contends that the statutory changes affected her accrued substantive rights in that they altered the substantive elements of causation that must be established to recover on a claim. Specifically, Ackison takes exception to the requirement in R.C. 2307.92 that a claimant provide prima facie evidence that the claimant's exposure to asbestos was a "substantial contributing factor" to the claimant's medical condition.

{¶ 31} R.C. 2307.91(FF) defines "substantial contributing factor" as follows:

{¶ 32} " 'Substantial contributing factor' means both of the following:

{¶ 33} "(1) Exposure to asbestos is the predominate cause of the physical impairment alleged in the asbestos claim.

{¶ 34} "(2) A competent medical authority has determined with a reasonable degree of medical certainty that without the asbestos exposures the physical impairment of the exposed person would not have occurred."

{¶ 35} Ackison contends that the requirement that exposure to asbestos be the "predominate cause" of the alleged impairment is a departure from the common-law standard for proximate cause in tort. Specifically, Ackison contends that the General Assembly's choice of the word "predominate" requires a plaintiff to prove that all other potential causes of injury are insignificant, thereby altering the common-law standard for proximate causation in asbestos claims.

{¶ 36} The General Assembly's choice of the word "predominate" in R.C. 2307.91(FF)(1) is indeed perplexing.[1] The word "predominate" is a verb, but it is

---

1. The phrase "predominate cause" is not a phrase common to Ohio law. It does appear to be common in cases within at least one nearby jurisdiction; yet, even in those cases, it is regarded as either less demanding than or equal to proximate cause. See, e.g., *Morgan v. Utica Mut. Ins. Co.* (C.A.6), 229 F.3d 1153 (applying Tennessee law); *Doe v. Rogers* (Jan. 31, 1997), Tenn.App. No.

used in that subsection as an adjective. As a result, it is susceptible of more than one meaning and is therefore ambiguous. " 'The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it.' *Slingluff v. Weaver* (1902), 66 Ohio St. 621, 64 N.E. 574, paragraph one of the syllabus. This court may engage in statutory interpretation when the statute under review is ambiguous." *Tomasik v. Tomasik,* 111 Ohio St.3d 481, 2006-Ohio-6109, 857 N.E.2d 127, ¶ 13.

{¶ 37} In construing such a statute, we are guided by the principles of construction found in R.C. 1.49, which states:

{¶ 38} "If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

{¶ 39} "(A) The object sought to be attained;

{¶ 40} "(B) The circumstances under which the statute was enacted;

{¶ 41} "(C) The legislative history;

{¶ 42} "(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

{¶ 43} "(E) The consequences of a particular construction."

{¶ 44} Following these principles, we observe that one possible construction of the word "predominate" is the adjective "predominant," which is an apparent variation. See Bryan A. Garner, A Dictionary of Modern Legal Usage (2d Ed. 1995) 682.[2] But interpreting the term in that way would alter the common-law element of proximate causation and render the statute unconstitutionally retroactive in this case. R.C. 1.47 states:

{¶ 45} "In enacting a statute, it is presumed that:

{¶ 46} "(A) Compliance with the constitutions of the state and of the United States is intended."

{¶ 47} Accordingly, we will not construe the term predominate, as used in R.C. 2307.91(FF)(1), to mean predominant. Doing so would render the provision unconstitutionally retroactive, contrary to the guideline in R.C. 1.47(A). Furthermore, we observe that the General Assembly, in enacting this comprehensive reform legislation, was careful to make substantive changes prospective only.

---

03A01–9606–CV–00212, 1997 WL 36834. Significantly, this issue is largely left undiscussed in the briefs or the parties and their amici.

2. Indeed, Garner observes that "predominate" is a "needless variant" of the word "predominant." Bryan A. Garner, A Dictionary of Modern Legal Usage (2d Ed.1995) 682. Such variant forms, he observes, "lead not to precision in technical writing but to uncertainties about authorial intention." Id. at 583. This observation is consistent with our finding that the use of "predominate" in R.C. 2307.91(FF)(1) is ambiguous.

See, e.g., R.C. 2307.96(C). Thus, it does not appear to us that the General Assembly intended a substantive change by using the term "predominate."

{¶ 48} Rather than impose a construction that results in unconstitutional application, we construe the statute to be consistent with the common law. The phrase "predominate cause" contained in R.C. 2307.91(FF)(1) must be read in pari materia with R.C. 2307.91(FF)(2) because both are elements of the statutory definition of "substantial contributing factor." R.C. 2307.91(FF)(2) requires that a competent medical authority determine that "without the asbestos exposures the physical impairment of the exposed person would not have occurred." This requirement is, in essence, a "but for" test of causation, which is the standard test for establishing cause in fact. See *Anderson v. St. Francis—St. George Hosp., Inc.* (1996), 77 Ohio St.3d 82, 84–85, 671 N.E.2d 225. Cause in fact is distinct from proximate, or legal, cause. Once cause in fact is established, a plaintiff then must establish proximate cause in order to hold a defendant liable. See id. at 86, 671 N.E.2d 225, citing Prosser & Keeton, Law of Torts (5 Ed.1984) 265–266. See also Prosser & Keeton, id., at 272–273.

{¶ 49} When R.C. 2307.91(FF)(1) and (2) are read in pari materia, it appears that the two subsections were intended to require that asbestos exposure be a significant, direct cause of the injury to the degree that without the exposure to asbestos, the injury would not have occurred. Thus, the statute reflects the common-law requirement that asbestos exposure be both a cause in fact and the direct cause of the plaintiff's illness. This is an embodiment of the common law, not an alteration of it. Because we hold that R.C. 2307.91(FF) does not alter the common law that existed at the time Ackison filed her claim, the statute is not unconstitutionally retroactive and may be applied to her pending claim.

{¶ 50} Ackison also contends that R.C. 2307.91(FF) alters the standard of causation for asbestos-exposure cases specifically, as established in *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196. We disagree. *Horton* addressed a multidefendant situation, in which the issue was the degree of exposure to the product of a particular defendant that the plaintiff must prove to avoid summary judgment. We held that in such a multidefendant asbestos case, the plaintiff has the burden of proving both exposure to each defendant's product and that the product was a "substantial factor" in causing the plaintiff's injury. Id. at paragraph one of the syllabus. We further held that in proving that the product was a substantial factor in causing his injury, the plaintiff "need not prove that he was exposed to a specific product on a regular basis over some extended period of time in close proximity to where the plaintiff actually worked." Id. at paragraph two of the syllabus (declining to follow *Lohrmann v. Pittsburgh Corning Corp.* (C.A.4, 1986), 782 F.2d 1156).

{¶ 51} However, *Horton* did not address the issue here, which is whether exposure to asbestos was "the predominate cause of the physical impairment" without which "the physical impairment * * * would not have occurred." R.C. 2307.91(FF). The *Horton* inquiry, rather, pertained to determining which exposure to a particular defendant's asbestos-containing product, in a case involving multiple defendants, was sufficient to hold that defendant legally responsible.

{¶ 52} Consequently, there is no inconsistency between R.C. 2307.91(FF) and the substantive law as set forth in *Horton*. The provisions of H.B. 292 at issue address only the prima facie showing of whether a plaintiff's claimed injuries are genuinely asbestos-related. The provisions do not involve the more detailed inquiry of whether a *particular* defendant's product is the cause of the plaintiff's illness. The definition of "substantial contributing factor" does not alter the proof necessary to establish particular causation by a particular defendant when the trier of fact reviews the merits of a claim. Therefore, the definition does not affect accrued substantive rights.

{¶ 53} Finally, Ackison takes exception to the definition of the term "substantial occupational exposure" contained in R.C. 2307.91(GG), which states:

{¶ 54} " 'Substantial occupational exposure to asbestos' means employment for a cumulative period of at least five years in an industry and an occupation in which, for a substantial portion of a normal work year for that occupation, the exposed person did any of the following:

{¶ 55} "(1) Handled raw asbestos fibers;

{¶ 56} "(2) Fabricated asbestos-containing products so that the person was exposed to raw asbestos fibers in the fabrication process;

{¶ 57} "(3) Altered, repaired, or otherwise worked with an asbestos-containing product in a manner that exposed the person on a regular basis to asbestos fibers;

{¶ 58} "(4) Worked in close proximity to other workers engaged in any of the activities described in division (GG)(1), (2), or (3) of this section in a manner that exposed the person on a regular basis to asbestos fibers."

{¶ 59} Ackison argues that the statutory definition of "substantial occupational exposure" is a legislative attempt to adopt the so-called *Lohrmann* test, 782 F.2d 1156, which this court specifically rejected in *Horton*. If this claim is true, then the provision could not be retroactively applied without offending the Constitution. Ackison fails to demonstrate how this definition affects her claim. The requirement of showing "substantial occupational exposure" applies only to claims alleging lung cancer caused by exposure to asbestos when the victim is a smoker and to wrongful-death claims, neither of which is the case here. See R.C.

2307.92(C)(1)(c)(i) and (D)(1)(c)(i). In any event, we disagree that the definition is an adoption of the *Lohrmann* test.

{¶ 60} The *Lohrmann* test was specifically directed at the merits of an asbestos claim. In sum, it holds that in order to establish causation, "there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Lohrmann*, 782 F.2d at 1162–1163.

{¶ 61} While H.B. 292 defined the term "substantial occupational exposure" in R.C. 2307.91(GG), the bill simultaneously enacted R.C. 2307.96. The latter provision legislatively adopted the *Lohrmann* test as a *substantive* requirement for proving an asbestos-related claim. R.C. 2307.96(B); H.B. 292, Section 5, 150 Ohio Laws, Part III, 3992–3993. The General Assembly expressly acknowledged that its specific intent was to adopt the *Lohrmann* test and that doing so was contrary to our syllabus language in *Horton*. Id. Consequently, the General Assembly explicitly made that provision prospective only, reflecting the substantive nature of the change. R.C. 2307.96(C). Because the General Assembly confined its adoption of the *Lohrmann* test to the prospective provisions of R.C. 2307.96, we cannot conclude that its simultaneous adoption of R.C. 2307.91(GG) was substantive in nature. The definition, as it relates to the "procedural prioritization" of asbestos claims, *Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, 875 N.E.2d 919, ¶ 16, does not alter the substantive law of causation in the same vein as the adoption of R.C. 2307.96. We conclude that R.C. 2307.91(GG) is consistent with common law and not unconstitutionally retroactive.

## Conclusion

{¶ 62} For the reasons expressed herein, we hold that the requirements in R.C. 2307.91, 2307.92, and 2307.93 pertaining to asbestos-exposure claims are remedial and procedural and may be applied without offending the Retroactivity Clause of the Ohio Constitution to cases pending on September 2, 2004. Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Judgment reversed.

LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

MOYER, C.J., dissents without opinion.

PFEIFER, J., dissents with opinion.

———————

**PFEIFER, J., dissenting.**

{¶ 63} How does Danny Ackison fit into asbestos-litigation reform? Do one man's injuries matter in the midst of a crusade?

## Background

{¶ 64} The General Assembly, deciding that a crisis existed in Ohio regarding the administration of claims for alleged injuries caused by exposure to asbestos, radically changed the nature of asbestos litigation with 2003 Am.Sub.H.B. No. 292, 150 Ohio Laws, Part II, 3970 ("H.B. 292"). In *Norfolk S. Ry. Co. v. Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, 875 N.E.2d 919, ¶ 2, this court set forth the General Assembly's stated motivation behind the bill:

{¶ 65} "Based on its belief that '[t]he current asbestos personal injury litigation system is unfair and inefficient, imposing a severe burden on litigants and taxpayers alike,' the General Assembly enacted H.B. 292. H.B. 292, Section 3(A)(2), 150 Ohio Laws, Part III, 3970, 3988. By the end of 2000, 'over six hundred thousand people [had] filed asbestos claims' nationwide, and Ohio had 'become a haven for asbestos claims and, as a result, is one of the top five state court venues for asbestos filings.' Id. at Section 3(A)(3)(a) and (b), 150 Ohio Laws, Part III, 3989. The General Assembly further noted that in Cuyahoga County alone, the asbestos docket increased from approximately 12,800 cases in 1999 to over 39,000 cases by October 2003. Id. at Section 3(A)(3)(e), 150 Ohio Laws, Part III, 3989. Eighty-nine percent of claimants do not allege that they suffer from cancer, and '[s]ixty-six to ninety per cent of these non-cancer claimants are not sick.' Id. at Section 3(A)(5), 150 Ohio Laws, Part III, 3990."

{¶ 66} That Ohio is in the "top five" of claims filed should not be surprising: Ohio was in the top five most populous states from the start of World War II until the 1970 census (and was seventh in the 2000 census) and has historically been a center for industry. Nonetheless, the General Assembly has declared a crisis, and since the crisis lies in the number of cases pending in Ohio courts, the crisis cannot be lessened unless the number of pending cases is dramatically reduced. The crisis cannot go away unless cases go away, unless people go away. The people who must go away include plaintiffs with cases that were viable before September 4, 2004; H.B. 292 requires it. But this court does not have to let it happen.

{¶ 67} H.B. 292 changes the law so that people who had viable claims before its passage no longer have viable claims afterward. It achieves its end by changing the substance of what constitutes a valid injury, altering the nature of the medical proof necessary to prove a claim, modifying what constitutes causation in an asbestos-exposure claim, and essentially overruling this court in establishing new requirements for the extent of exposure to asbestos that is necessary to prove a claim. There is no way around it: H.B. 292 places new, substantive burdens on people with asbestos-exposure claims.

{¶ 68} The General Assembly, at least, offered a lifeline to claimants whose cause of action arose before the date of the passage of H.B. 292. Pursuant to R.C. 2307.93(A)(3), the requirements of H.B. 292 do not apply if they impair the substantive rights of the plaintiff and that impairment "is otherwise in violation of Section 28 of Article II, Ohio Constitution." The majority, however, cuts that lifeline today for all plaintiffs.

## The Injury

{¶ 69} The scapegoat of H.B. 292 is the injury generally known as pleural thickening, an alteration to the lining of the lungs that can be asymptomatic. Claimants with this injury are part of the so-called " '[s]ixty-six to ninety per cent [of claimants who] are *not sick.*' " (Emphasis added.) *Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, 875 N.E.2d 919, at ¶ 2, quoting H.B. 292, Section 3(A)(5), 150 Ohio Laws, Part III, 3990. Contrary to the General Assembly's and the majority's characterization, however, in Ohio, a person who has suffered an alteration to the lining of his lungs is indeed sick. In Cuyahoga County, where 39,000 cases were pending when H.B. 292 was enacted, the Eighth District Court of Appeals court held over a decade ago that "in Ohio the asbestos-related pleural thickening or pleural plaque, which is an alteration to the lining of the lung, constitutes physical harm, and as such satisfies the injury requirement for a cause of action for negligent failure to warn or for a strict products liability claim, even if no other harm is caused by asbestos." *In re Cuyahoga Cty. Asbestos Cases* (1998), 127 Ohio App.3d 358, 364, 713 N.E.2d 20. That holding is no trifle—it is the law in the Ohio appellate district where the vast majority of asbestos cases are litigated, it was never appealed to this court, and no Ohio appellate court has ever held differently. The court in *In re Cuyahoga Cty. Asbestos Cases* also held that plaintiffs' "knowledge that they possess nondysfunctional asbestos-related changes in their lungs places them on sufficient notice to start running the statute of limitations time-clock." 127 Ohio App.3d at 364–365, 713 N.E.2d 20.

{¶ 70} The alleged litigation crisis exists because Ohio *has* recognized that asbestos-related pleural thickening is an injury and had recognized it as an injury when Ackison was first diagnosed in 2000, when he died in 2003, and when his estate filed its lawsuit in April 2004. But the only way for H.B. 292 to alleviate the asbestos litigation crisis is not only to stop recognizing pleural thickening as an injury, but to declare that it was not an injury after people like Ackison had already sought redress for it. H.B. 292 stepped back in time, requiring certain claimants with matters pending on the effective date of the statute to establish a prima facie showing that the claimant suffered from a *newly defined* injury. That injury found its basis in tests and procedures that plaintiffs of Danny Ackison's era had no reason to undergo.

{¶ 71} After the enactment of H.B. 292, a plaintiff who seeks compensation for previously recognized nonmalignant injuries from asbestos exposure is required to provide the trial court with very specific and detailed information, above and beyond anything previously required. That information is not designed for those plaintiffs to prove the injury for which they have already sued, but to prove a *different* injury. Specifically, R.C. 2307.92(B) requires that a prima facie showing shall include all of the following minimum requirements:

{¶ 72} "(3) A diagnosis by a competent medical authority, based on a medical examination and pulmonary function testing of the exposed person, that all of the following apply to the exposed person:

{¶ 73} "(a) The exposed person has a permanent respiratory impairment rating of at least class 2 as defined by and evaluated pursuant to the AMA guides to the evaluation of permanent impairment.

{¶ 74} "(b) Either of the following:

{¶ 75} "(i) The exposed person has asbestosis or diffuse pleural thickening, based at a minimum on radiological or pathological evidence of asbestosis or radiological evidence of diffuse pleural thickening. The asbestosis or diffuse pleural thickening described in this division, rather than solely chronic obstructive pulmonary disease, is a substantial contributing factor to the exposed person's physical impairment, based at a minimum on a determination that the exposed person has any of the following:

{¶ 76} "(I) A forced vital capacity below the predicted lower limit of normal and a ratio of FEV1 to FVC that is equal to or greater than the predicted lower limit of normal;

{¶ 77} "(II) A total lung capacity, by plethysmography or timed gas dilution, below the predicted lower limit of normal;

{¶ 78} "(III) A chest x-ray showing small, irregular opacities (s, t) graded by a certified B-reader at least 2/1 on the ILO scale.

{¶ 79} "(ii) If the exposed person has a chest x-ray showing small, irregular opacities (s, t) graded by a certified B-reader as only a 1/0 on the ILO scale, then in order to establish that the exposed person has asbestosis, rather than solely chronic obstructive pulmonary disease, that is a substantial contributing factor to the exposed person's physical impairment the plaintiff must establish that the exposed person has both of the following:

{¶ 80} "(I) A forced vital capacity below the predicted lower limit of normal and a ratio of FEV1 to FVC that is equal to or greater than the predicted lower limit of normal;

{¶ 81} "(II) A total lung capacity, by plethysmography or timed gas dilution, below the predicted lower limit of normal."

{¶ 82} When Ackison's widow filed her claim, there was no requirement that her husband have "a permanent respiratory impairment rating of at least a class 2 as defined by and evaluated pursuant to AMA guides to the evaluation of permanent impairment." But under H.B. 292, any claimant with nonmalignant asbestos-related disease whose impairment does not reach the class 2 stage as defined by the AMA guides has his claim administratively dismissed. R.C. 2307.93(A)(3)(c).

{¶ 83} Prior to H.B. 292, a plaintiff would have to prove that he was exposed to the product, that the product injured him, and that those injuries affected his life. Was that an unreasonable standard? Or is it a standard that we would place on any plaintiff for any injury?

{¶ 84} The majority writes that in Ackison's case, "[a]lthough the legislation caused a hold to be placed on the claim, the hold did not by itself extinguish the claim." True. But claimants like Danny Ackison will not get a chance to avail themselves of R.C. 2307.93(A)(3)(c)'s "come back when you're sicker" provision. Danny Ackison will not be getting sicker. And he will never have the opportunity to vindicate his rights that existed on the day he learned that his workplace exposure to asbestos had made him sick. H.B. 292 established that Ackison's compensable harm was no longer a compensable harm.

### Competent Medical Authority

{¶ 85} The majority claims that the term "competent medical authority" was not defined by either statute or case law before the enactment of R.C. 2307.91. The majority writes that "[b]y choosing to define that term, the legislature did not take away Ackison's [executor's] right to pursue her claim. Nor did the definition alter the quantum of proof necessary for a plaintiff to prevail in an asbestos-related claim. Rather, it merely defined the procedural framework by which trial courts are to adjudicate such claims." That is a bit like saying that the Blitzkrieg was merely Germany's way to define its border with Poland.

{¶ 86} The definition of "competent medical authority" adds requirements for proof of an injury. The majority does not set forth these specific requirements in its opinion, allowing it to more easily make the statement "The definition of competent medical authority pertains to the witness's competence to testify and is, in essence, more akin to a rule of evidence." R.C. 2307.91(Z) provides that a "competent medical authority" must meet the following requirements:

{¶ 87} "(1) The medical doctor is a board-certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist.

{¶ 88} "(2) The medical doctor is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person.

{¶ 89} " * * *

{¶ 90} "(4) The medical doctor spends not more than twenty-five percent of the medical doctor's professional practice time in providing consulting or expert services in connection with actual or potential tort actions, and the medical doctor's medical group, professional corporation, clinic, or other affiliated group earns not more than twenty percent of its revenues from providing those services."

{¶ 91} R.C. 2307.91(Z) has nothing to do with the *competence* of physicians to testify, as a rule of evidence might. No matter the expertise or experience of the doctor, if the doctor is not the claimant's treating physician, or if he makes too much money consulting with tort victims, he may not testify on behalf of the claimant.

{¶ 92} R.C. 2307.91(Z) is a special rule for asbestos plaintiffs only and is designed to attack the way their cases are brought. It changes the type of evidence necessary to prosecute a claim. It requires Danny Ackison, *a dead man*, to find an internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist to become his *treating* physician. Without that relationship, there is no claim. No statute or rule of evidence anywhere approaching that kind of evidentiary requirement existed at the time Ackison filed his claim. It adds an element to proving a claim that for Ackison is impossible to achieve. That requirement kills his cause of action by redefining it into oblivion.

### Substantial Contributing Factor

{¶ 93} R.C. 2307.92 requires a claimant to provide prima facie evidence that the claimant's exposure to asbestos was a "substantial contributing factor" to the claimant's medical condition; R.C. 2307.91(FF) defines "substantial contributing factor" as including both of the following factors:

{¶ 94} "(1) Exposure to asbestos is the predominate cause of the physical impairment alleged in the asbestos claim.

{¶ 95} "(2) A competent medical authority has determined with a reasonable degree of medical certainty that without the asbestos exposures the physical impairment of the exposed person would not have occurred."

{¶ 96} The majority saves the General Assembly from itself, finding that interpreting the term "predominate cause" in the way the General Assembly obviously intended "would alter the common-law element of proximate causation and render the statute unconstitutionally retroactive in this case." The General Assembly could not have meant to do *that,* the majority concludes. Latching on to the idea that the grammatically shaky word "predominate" might or might not mean "predominant," the majority finds that the word is ambiguous and decides

to interpret the statute in a manner "consistent with the common law." To do so, it excises "predominate" from the statute:

{¶ 97} "[W]e observe that the General Assembly, in enacting this comprehensive reform legislation, was careful to make substantive changes prospective only. * * * Thus, it does not appear that the General Assembly intended a substantive change by using the term 'predominate.'"

{¶ 98} So much for the vital skepticism underlying the separation of powers. The majority imputes constitutional motives to the General Assembly even though the General Assembly's true motives were revealed in the language the majority has seen fit to remove. I would find R.C. 2307.91(FF) unconstitutional.

## Substantial Occupational Exposure

{¶ 99} The majority is correct that the term "substantial occupational exposure" in R.C. 2307.91(GG) applies only to lung cancer claims brought either by wrongful-death claimants or by claimants who smoked. Instead of ignoring the definition of "substantial occupational exposure" as irrelevant to this cause of action, however, the majority grants the phrase its imprimatur.

{¶ 100} R.C. 2307.91(GG) sets forth specific requirements for the claimant's length of exposure to asbestos and the types of exposure necessary to state a claim:

{¶ 101} "(GG) 'Substantial occupational exposure to asbestos' means employment for a cumulative period of at least five years in an industry and an occupation in which, for a substantial portion of a normal work year for that occupation, the exposed person did any of the following:

{¶ 102} "(1) Handled raw asbestos fibers;

{¶ 103} "(2) Fabricated asbestos-containing products so that the person was exposed to raw asbestos fibers in the fabrication process;

{¶ 104} "(3) Altered, repaired, or otherwise worked with an asbestos-containing product in a manner that exposed the person on a regular basis to asbestos fibers;

{¶ 105} "(4) Worked in close proximity to other workers engaged in any of the activities described in division (GG)(1), (2), or (3) of this section in a manner that exposed the person on a regular basis to asbestos fibers."

{¶ 106} This court held in *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph two of the syllabus, that "[a] plaintiff need not prove that he was exposed to a specific product on a regular basis over some extended period of time in close proximity to where the plaintiff actually worked in order to prove that the product was a substantial factor in causing his injury." In so holding, we specifically disapproved the test enumerated in *Lohrmann v.*

*Pittsburgh Corning Corp.* (C.A.4, 1986), 782 F.2d 1156. "Under the *Lohrmann* test, to escape summary judgment a plaintiff must present evidence of 'exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.'" *Horton,* 73 Ohio St.3d at 681, 653 N.E.2d 1196, quoting *Lohrmann,* 782 F.2d at 1162–1163.

{¶ 107} The majority argues that since the General Assembly did not expressly adopt the *Lohrmann* test in regard to R.C. 2307.91(GG), the statute did not violate the Constitution. However, the requirements of R.C. 2307.91(GG) are even more stringent than the *Lohrmann* test.

{¶ 108} The majority writes that since the General Assembly made it known that it intended to adopt the *Lohrmann* test in R.C. 2307.96 and expressly made it prospective in R.C. 2307.96(C), "we cannot conclude that its simultaneous adoption of R.C. 2307.91(GG) was substantive in nature." The majority seems to say that R.C. 2307.91(GG) is not substantive because in R.C. 2307.96(C), the General Assembly admitted it was altering a substantive requirement, whereas it did not make such an admission in regard to R.C. 2307.91(GG). In other words, if R.C. 2307.91(GG) were substantive, the General Assembly would surely admit to it.

{¶ 109} But the requirements of R.C. 2307.91(GG) are indeed substantive— they kick certain plaintiffs out of the courthouse. A claimant cannot make a claim for wrongful death or lung cancer without proving five years of exposure to asbestos. Prior to H.B. 292, there was nothing remotely like that requirement in the law. A person with four and a half years of exposure could state a claim prior to the passage of H.B. 292; now that same person would have no claim. In *Horton,* this court "decline[d] to establish a formulaic approach in an area which defies that kind of analysis." Id., 73 Ohio St.3d at 687, 653 N.E.2d 1196. Today, the majority finds that the General Assembly's adoption of a formulaic approach does not constitute a substantive change in the law.

{¶ 110} The majority says that a retroactive adoption of the *Lohrmann* test would be a substantive change. However, R.C. 2307.91(GG) adopts a more stringent version of the *Lohrmann* test, and the majority calls that change merely procedural. Why? No reason is given.

### The Past and Future of Asbestos Litigation in Ohio

{¶ 111} Appellants submit that there are potentially 200,000 asbestos claimants in Ohio, about a five-fold increase from the time H.B. 292 was passed. Even if this court were to find its retroactive application unconstitutional, H.B. 292 would still be applicable to all of those new cases, and thus the vast majority of all cases. H.B. 292 would not go away.

{¶ 112} Further, could it be that the General Assembly's declaration of an asbestos-litigation crisis is overblown? This court, speaking through its Chief Justice and senior staff, thought so around the time the bill was passed:

{¶ 113} "Ohio Supreme Court Chief Justice Thomas Moyer, in a letter to the bill's sponsor, Rep. Scott Oelslager, a Canton Republican, said the judicial system was being administered 'very efficiently.'

{¶ 114} "Doug Stephens, director of the Supreme Court's judicial services, said asbestos cases are not bogged down.

{¶ 115} " 'They do a good job of moving cases through the system,' Stephens said. 'We have not received complaints that the asbestos docket is holding anybody up.' " Brown, Measure Aims to Halt Asbestos–Exposure Suits; Proof-of–Injury Requirement May Clear Half of Cases, Cleveland Plain Dealer (Dec. 12, 2003) A1.

{¶ 116} The fact is that the judicial system on its own, and especially in Cuyahoga County, has found a way to effectively administer asbestos litigation. Prioritization of claims already occurred long before H.B. 292; *In re Cuyahoga Cty. Asbestos Cases,* decided a decade ago, characterized the trial court's method of prioritizing of asbestos claims as a "traditional exercise of the court's authority to control its docket." Id., 127 Ohio App.3d at 366, 713 N.E.2d 20. Three visiting judges currently sit in Cuyahoga County to preside over asbestos cases exclusively. There is no reason to believe that the most injured plaintiffs are not getting redress the most swiftly.

{¶ 117} This court's job in this case is not to fix a crisis declared by the General Assembly; our duty is to determine what is right for Danny Ackison under the Ohio Constitution. Our role in this state is to protect the rights guaranteed by the Constitution, not to guide along what might or might not be a good legislative idea. This court's complicity with the General Assembly when it violates the Constitution is not judicial restraint; it is doing the work of the legislature from the bench.

## Appendix

{¶ 118} R.C. 2307.91(Z) reads as follows:

{¶ 119} "Competent medical authority" means a medical doctor who is providing a diagnosis for purposes of constituting prima-facie evidence of an exposed person's physical impairment that meets the requirements specified in section 2307.92 of the Revised Code and who meets the following requirements:

{¶ 120} "(1) The medical doctor is a board-certified internist, pulmonary specialist, oncologist, pathologist, or occupational medicine specialist.

{¶ 121} "(2) The medical doctor is actually treating or has treated the exposed person and has or had a doctor-patient relationship with the person.

{¶ 122} "(3) As the basis for the diagnosis, the medical doctor has not relied, in whole or in part, on any of the following:

{¶ 123} "(a) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition in violation of any law, regulation, licensing requirement, or medical code of practice of the state in which that examination, test, or screening was conducted;

{¶ 124} "(b) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that was conducted without clearly establishing a doctor-patient relationship with the claimant or medical personnel involved in the examination, test, or screening process;

{¶ 125} "(c) The reports or opinions of any doctor, clinic, laboratory, or testing company that performed an examination, test, or screening of the claimant's medical condition that required the claimant to agree to retain the legal services of the law firm sponsoring the examination, test, or screening.

{¶ 126} "(4) The medical doctor spends not more than twenty-five per cent of the medical doctor's professional practice time in providing consulting or expert services in connection with actual or potential tort actions, and the medical doctor's medical group, professional corporation, clinic, or other affiliated group earns not more than twenty per cent of its revenues from providing those services."

---

Motley Rice, L.L.C., and John J. McConnell Jr.; Young, Reverman & Mazzei Co., L.P.A., Richard E. Reverman, and Kelly Thye, for appellee.

Vorys, Sater, Seymour & Pease, L.L.P., Richard D. Schuster, Nina I. Webb-Lawton, and Michael J. Hendershot, for appellants H.B. Fuller Co., Industrial Holdings Corp., Union Carbide Corp., Amchem Products, Inc. and Certainteed Corp.

Bunda, Stutz & DeWitt, P.L.L., and Rebecca C. Sechrist; Schiff Hardin, L.L.P., and Robert H. Riley, for appellant Owens-Illinois, Inc.

Gallagher Sharp, Kevin C. Alexandersen, John A. Valenti, Colleen A. Mountcastle, and Holly Olarczuk-Smith, for appellants Beazer East, Inc. and Ingersoll-Rand Co.

Blank Rome, L.L.P., Michael L. Cioffi, and William M. Huse, for appellant Honeywell International, Inc.

David L. Day, L.P.A., and David L. Day, for appellant John Crane, Inc.

Tucker, Ellis & West, L.L.P., Henry E. Billingsley II, Carter E. Strang, Rachel McQuade, and Halle M. Herbert, for appellants BOC Group, Inc., f.k.a. Airco, Inc., Hobart Brothers Co., and Lincoln Electric Co.

Oldham & Dowling and Reginald S. Kramer, for appellants General Electric Co. and CBS Corp., a Delaware corporation, f.k.a. Viacom, Inc., successor by merger to CBS Corp., a Pennsylvania corporation, f.k.a. Westinghouse Electric Corp.

Ulmer & Berne, L.L.P., Bruce P. Mandel, and Kurt S. Siegfried, for appellant Ohio Valley Insulating Co., Inc.

Eagen & Wykoff Co., L.P.A., Thomas L. Eagen Jr., and Christine Carey Steele, for appellant International Minerals and Chemical Corp. (Mallinckrodt).

Ulmer & Berne, L.L.P., Timothy M. Fox, Charles R. Janes, James N. Kline, Kurt S. Siegfried, Robert E. Zulandt III, and Sally A. Jamieson, for appellant Georgia–Pacific L.L.C., f.k.a. Georgia–Pacific Corp.

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy, and Marc J. Jaffy, urging affirmance for amicus curiae Ohio AFL–CIO.

Brickler & Eckler, L.L.P., Kurtis A. Tunnell, and Anne Marie Sferra, urging reversal for amici curiae Ohio Manufacturers' Association, National Federation of Independent Business/Ohio, Ohio Chamber of Commerce, Ohio Alliance for Civil Justice, and Ohio Chemistry Technology Council.

Shook, Hardy & Bacon, L.L.P., Victor E. Schwartz, Mark A. Behrens, and Christopher E. Appel, urging reversal for amici curiae American Insurance Association, National Federal of Independent Business Legal Foundation, Chamber of Commerce of the United States of America, National Association of Manufacturers, National Association of Mutual Insurance Companies, Property Casualty Insurers Association of America, and American Chemistry Council.